UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
STEVEN LEBETKIN,                      :
                      Plaintiff,      :          18cv8170 (DLC)
            -v-                       :
                                      :          OPINION AND ORDER
AYSE GIRAY a/k/a SARA BARAN, LEWIS    :
SASSOON, ESQ., SASSOON & CYMROT, LLP, :
and JOHN DOES 1 through 25,           :
                                      :
                      Defendants.     :
                                      :
------------------------------------- X

APPEARANCES

For the plaintiff:
Paul W. Verner
Verner Simon
30 Wall Street, 8th Floor
New York, New York 10005

For defendant Ayse Giray:
Michael H. Smith
Rosenberg Feldman Smith, LLP
551 Fifth Ave, 24th Floor
New York, New York 10176

For defendants Lewis Sassoon and Sassoon & Cymrot LLP:
Howard P. Magaliff
Rich Michaelson Magaliff, LLP
335 Madison Avenue, 9th Floor
New York, New York 10017

DENISE COTE, District Judge:

     Defendant Ayse Giray ("Giray") has moved to dismiss the

Second, Eighth, and Tenth Causes of Action asserted against her

in the first amended complaint ("FAC").  Defendants Lewis

Sassoon and Sassoon & Cymrot, LLP (collectively, "the Sassoon

Defendants") have moved to dismiss the claims against them in

1

their entirety.  For the reasons that follow, both motions are
granted.

## Background

The following facts are alleged in the FAC.  In 2006,
plaintiff Steven Lebetkin ("Lebetkin") entered into a romantic
relationship with defendant Giray.  Giray is the former spouse
of non-party Hamdi Ulukaya ("Ulukaya"), who is the founder of
the successful Chobani yogurt brand.  During the course of their
relationship, Lebetkin became aware that Giray had, during her
marriage to Ulukaya, invested capital in Euphrates, Inc., which
was apparently a predecessor to Chobani, Inc.  Drawing upon his
experience as a former certified public accountant, Lebetkin
determined that Giray might have a legal claim to part ownership
of Euphrates, Inc. and Chobani, Inc. (collectively, "the Chobani
Entities," and together with Ulukaya, "the Chobani Defendants").

Lebetkin discussed Giray's legal options with her.  In May
2012, Giray promised Lebetkin that, in exchange for working on
her behalf to analyze her potential claims, to assess the value
of her potential stake in the Chobani Entities, and to "support
the lawsuit, including selecting and managing the appropriate
legal counsel," he would be compensated for his services.

In June 2012, Lebetkin contacted defendant Lewis Sassoon to
discuss Giray's potential lawsuit.  Lewis Sassoon had been a
personal friend of Lebetkin's for more than ten years, and the

two had worked together previously on various business transactions and litigation. Also in June 2012, Lewis Sassoon introduced Lebetkin and Giray to attorneys Richard B. Feldman ("Feldman") and Michael H. Smith at the New York firm of Rosenberg Feldman Smith LLP, where Lewis Sassoon's son, Stephen J. Sassoon, was also an associate (collectively, "the RFS Attorneys"). Discussions began for Giray to retain the RFS Attorneys and the Sassoon Defendants (collectively, "the Giray Attorneys") to represent her in her contemplated litigation against the Chobani Defendants ("the Chobani Litigation"). This included discussions about Lebetkin's role as a "litigation consultant." It was agreed that the Giray Attorneys would produce a complaint based on Lebetkin's valuation of the Chobani Entities.

On July 16, 2012, Lebetkin and Giray entered into a formal written contract delineating Lebetkin's role in the Chobani Litigation ("the Consulting Agreement").[1] The Sassoon Defendants drafted the Consulting Agreement and reviewed it independently with Lebetkin. They specifically recommended that the Consulting Agreement be interminable for the life of the Chobani Litigation and that it not allow for unilateral termination by Giray. Lebetkin alleges that he understood the Sassoon

_____

[1] The Consulting Agreement is attached to the FAC as Exhibit C.

3

Defendants to be representing him as his attorneys in the drafting of the Consulting Agreement. Defendant Lewis Sassoon allegedly counseled Lebetkin regarding the terms of the Consulting Agreement and assured Lebetkin that Sassoon & Cymrot LLP would "be the paymaster of Lebetkin's fees and would protect them from any interference."

The Consulting Agreement provided that Lebetkin would perform various services in relation to a potential lawsuit "in connection with establishing Giray's ownership interest to a portion of the shares of stock" of the Chobani Entities. These services were to include "business consultation, review of business records, and working with attorneys and accountants."[2] The Consulting Agreement provided that the parties "may amend the scope of work in writing from time to time" and that "[n]o changes or modifications or waivers to this Agreement will be effective unless in writing and signed by both parties." In exchange for his services, Lebetkin was to receive three percent of any recovery Giray received from the contemplated lawsuit.

---

[2] Lebetkin additionally alleges that the Consulting Agreement provided that he would "manage" the Giray Attorneys, but no provision to that effect appears in the Agreement. To the extent that an oral agreement existed to that effect, it is superseded by the integration clause of the Consulting Agreement, which states that "This Agreement constitutes the entire agreement of the parties hereto, and all previous communications between the parties, whether written or oral with reference to the subject matter of this Agreement, are hereby canceled and superseded."

The Consulting Agreement further provided that it would terminate "on the close or termination of the Law Suit or the close of negotiations and settlement of the Law Suit."

Giray insisted that the Consulting Agreement with Lebetkin be executed prior to the execution of two engagement letters between her and the Giray Attorneys. Those engagement letters were executed on the same day. On Giray's behalf, Lebetkin negotiated a thirty percent contingency fee arrangement with the Giray Attorneys. Lebetkin alleges that this reduction from the "standard" 33 1/3 percent contingency fee was agreed to in order to account for his 3 percent consulting fee. Lebetkin further alleges that Lewis Sassoon, after conferring with Feldman, orally agreed on behalf of the Giray Attorneys to cap their fee at $10 million.[3]

Lebetkin alleges that he fully performed all of the services contemplated under the Consulting Agreement, as well as "other critical nondelineated services beyond the written scope of work set forth in the Agreement." He valued Giray's equity

---

[3] The engagement letter between Giray and the RFS Attorneys makes no mention of a fee cap, and specifically provides that the letter "contains the entire agreement between [Giray] and the Firm regarding the matters described herein and supersedes any and all prior oral or written agreements." Although that document was not attached to Lebetkin's complaint, it is integral to the complaint and is properly considered at the motion to dismiss stage. See Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016).

claim in Chobani and provided his analysis to the Giray Attorneys. The Giray Attorneys prepared a complaint and sent it to Lebetkin for review and comments.

During the course of preparing for the litigation, a series of disputes arose between Lebetkin and the Giray Attorneys. He repeatedly urged the Giray Attorneys to contact attorneys for the Chobani Defendants to attempt to negotiate a settlement prior to the filing of a complaint. The Giray Attorneys declined to do so. Lebetkin apparently warned Giray that her attorneys "may be motivated to enter into a sustained process to justify egregious legal fees." In July 2012, a dispute arose between Lebetkin and the Giray Attorneys over the use in the litigation of an affidavit of Adile Batuk, a personal friend of Giray, which Lebetkin believed to be perjurious. Lebetkin alleges that the perjurious affidavit was procured by Giray's promise to pay Batuk $3 million from Giray's recovery from the lawsuit. This was changed to five percent of the recovery at some unspecified later date. Lebetkin also disagreed with the Giray Attorneys over "wrongful statements by Giray and Ulukaya regarding the validity of their 1997 marriage," and the omission of certain information from the complaint regarding a Small Business Administration loan made to Chobani.[4]

---

[4] It appears that this information was ultimately included in the complaint filed on Giray's behalf in the New York Supreme Court.

Giray's complaint was filed in the New York Supreme Court on August 14, 2012. Lebetkin's disagreements with the Giray Attorneys continued after the filing of the complaint. Lebetkin engaged in "extremely heated" discussions and emails with the Giray Attorneys over whether to request production of documents related to certain Small Business Administration loans from the Chobani Defendants. The Giray Attorneys did eventually request these documents in response to Giray's demand that they do so. The Supreme Court ultimately ordered the Chobani Defendants to produce these documents.

Lebetkin's ongoing conflict with the Giray Attorneys led attorney Feldman to send Lebetkin an email in August 2012 threatening him with a restraining order if he did not cease and desist advising and directing Giray with regard to the Chobani Litigation. During this time, Lebetkin's relationship with Giray apparently deteriorated, culminating in the end of their romantic relationship in September 2012. During August 2012, defendant Lewis Sassoon allegedly "consoled" Lebetkin and told him that he "had his (Lebetkin's) back," although he took no action to interfere with Feldman on Lebetkin's behalf. He specifically promised Lebetkin that he would travel to New York from Boston once a week and would "make sure the case stayed on track" and that Lebetkin would "stay informed."

On September 6, 2012, Feldman delivered to Lebetkin a

letter signed by Giray unilaterally terminating the Consulting Agreement. Lebetkin alleges that this letter was procured by Feldman through unspecified "tortious communications with Giray," and that defendant Lewis Sassoon, "either subsequently tacitly or overtly joined" in Feldman's tortious interference, in an unspecified way. Lebetkin alleges that the Sassoon Defendants made "private assurances to Lebetkin that they would protect his contract and fees," but nonetheless failed to intercede on his behalf.

Settlement discussions between Giray and the Chobani Defendants took place from 2012 through 2014, and apparently deadlocked in July 2014. Despite having received the September 6, 2012 termination letter and the deterioration of his relationship with both Giray and her attorneys, Lebetkin apparently continued to perform work related to the Chobani Litigation. He alleges that after July 2014 he "was instrumental in bringing the parties together by focusing their attention on litigation reality," but does not provide further details as to his role, or how he came to be involved in settlement discussions.[5] Giray and the Chobani Defendants eventually reached a settlement on July 15, 2015. Lebetkin

---

[5] Elsewhere in the FAC, Lebetkin alleges that Lewis Sassoon acted as a "liaison" between him and Giray up through the settlement of the Chobani Litigation in July 2015.

alleges, upon information and belief, that the Chobani
Defendants and Giray agreed to a two-part settlement package
worth several million dollars that is being paid in ongoing
installments, although he admits he does not know the value of
the settlement.

Lebetkin thereafter made repeated demands to Giray, Lewis
Sassoon, and Feldman for payment of his fees pursuant to the
Consulting Agreement. As of the time of filing, he has not
received any payment.

The complicated procedural history of this case is laid out
in more detail in an Opinion and Order of October 26, 2018. In
short, Lebetkin has raised several claims against Giray, the
Sassoon Defendants, the RFS Attorneys, and Adile Batuk in
various state and federal actions. The original action
(18cv2211) in this dispute was filed in this Court by Lebetkin
on March 12, 2018, against Giray and the Sassoon Defendants. On
March 26, a related action was filed in the New York Supreme
Court against Adile Batuk and the RFS Attorneys, asserting
claims for tortious interference with the Consulting Agreement,
among others. On August 27, Lebetkin voluntarily dismissed his
initial action in this Court. On September 6, Lebetkin re-filed
his complaint against Giray and the Sassoon Defendants in the
New York Supreme Court. The defendants removed the case to this
Court the following day based on diversity of citizenship, and

it was accepted as related to Lebetkin's original action in this Court. On September 27, Lebetkin amended his complaint to add as defendants the RFS Attorneys and Adile Batuk, who are citizens of New York, and moved to remand the case to the New York Supreme Court. An Opinion and Order of October 26 denied the motion to remand, severed the non-diverse defendants Adile Batuk and the RFS Attorneys, and dismissed Lebetkin's claims against them without prejudice.

The operative complaint asserts nine causes of action against the remaining defendants. Against Giray, Lebetkin has asserted claims for breach of contract, breach of fiduciary duty, unjust enrichment, quantum meruit, and prima facie tort. Against the Sassoon Defendants, Lebetkin has asserted claims for breach of fiduciary duty, professional malpractice, tortious interference with existing contract, aiding and abetting breach of fiduciary duty, unjust enrichment, and quantum meruit.

On October 12, Giray moved to dismiss Lebetkin's breach of fiduciary duty, unjust enrichment, and prima facie tort claims against her for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. On the same date, the Sassoon Defendants moved to dismiss the claims against them in their entirety, also pursuant to Rule 12(b)(6). Those motions became fully submitted on November 14 and November 19, respectively.

**Discussion**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cohen v. Rosicki, Rosicki & Assocs., 897 F.3d 75, 80 (2d Cir. 2018) (citation omitted). A claim to relief is plausible when the factual allegations in a complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Progressive Credit Union v. City of New York, 889 F.3d 40, 48 (2d Cir. 2018) (citation omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Carlin v. Davidson Fink LLP, 852 F.3d 207, 212 (2d Cir. 2017). The plaintiff must plead enough facts to "nudge[] [his] claims across the line from conceivable to plausible . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."

11

<u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 230 (2d Cir. 2016)

(citation omitted).

I.   Defendant Ayse Giray

Giray has moved to dismiss Lebetkin's claims for breach of

fiduciary duty, unjust enrichment, and prima facie tort.  She

has not moved to dismiss Lebetkin's claims for breach of

contract and quantum meruit.

A. Breach of Fiduciary Duty

Under New York law,[6] the elements of a claim for a breach of

a fiduciary obligation are: "(i) the existence of a fiduciary

duty; (ii) a knowing breach of that duty; and (iii) damages

resulting therefrom."  <u>Spinelli v. Nat'l Football League</u>, 903

F.3d 185, 207 (2d Cir. 2018) (citation omitted).  "A fiduciary

relationship exists under New York law when one person is under

a duty to act for or to give advice for the benefit of another

_____

[6] The parties agree that New York law applies to Lebetkin's
claims.  As a New York federal court sitting in diversity
jurisdiction, this Court applies the choice of law rules of New
York.  <u>See</u>, <u>Cap Gemini Ernst & Young, U.S. LLC v. Nackel</u>, 346
F.3d 360, 366 (2d Cir. 2003) (citation omitted).  In tort
actions, New York courts "seek to apply the law of the
jurisdiction with the most significant interest in, or
relationship to, the dispute."  <u>White Plains Coat & Apron Co.,
Inc. v. Cintas Corp.</u>, 460 F.3d 281, 284 (2d Cir. 2006) (citation
omitted).  All of the events at issue occurred in New York, and
the underlying Chobani Litigation was conducted in New York
courts.  Additionally, both Lebetkin and Giray were New York
residents during the relevant time period.  Finally, each of the
parties has relied on New York law in addressing this motion.
<u>See</u> <u>Arch Ins. Co. v. Precision Stone, Inc.</u>, 584 F.3d 33, 39 (2d
Cir. 2009).

upon matters within the scope of the relation." Id. (citation
omitted). "It exists only when a person reposes a high level of
confidence in another, who thereby exercises control and
dominance over him." People v. Coventry First LLC, 13 N.Y.3d
108, 115 (2009).

Lebetkin has not adequately pleaded that Giray owed him a
fiduciary obligation. The FAC makes clear that Giray and
Lebetkin had a contractual relationship. The fact of their
romantic involvement does not convert their contractual
relationship into a fiduciary obligation. Nothing on the face
of the Consulting Agreement or the circumstances surrounding its
adoption suggests that Giray owed Lebetkin any legal duties
independent of her obligations under the Consulting Agreement.
If anything, the facts alleged in the FAC indicate that Giray
was the weaker party, over whom Lebetkin exercised "control and
dominance." Because Lebetkin has failed to adequately plead
that Giray owed him a fiduciary duty, his claims against her for
breach of that duty are dismissed.

B. Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a
plaintiff must establish (1) that the defendant benefitted; (2)
at the plaintiff's expense; and (3) that equity and good
conscience require restitution." Beth Israel Med. Ctr. V.
Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d

13

573, 586 (2d Cir. 2006) (citation omitted).  The theory of unjust enrichment, however, "lies as a quasi-contract claim.  It is an obligation the law creates in the absence of any agreement."  Id. (citation omitted) (emphasis in original).  "It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."  Id. at 587(citation omitted).

Lebetkin has alleged that he fully performed his obligations under the Consulting Agreement, no defendant disputes the existence of the Agreement, and the scope of the agreement covers the dispute here.  Accordingly, Lebetkin's unjust enrichment claim against Giray is dismissed.

C. Prima Facie Tort

"To state a legally cognizable claim for prima facie tort, a plaintiff must allege (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful."  Posner v. Lewis, 18 N.Y.3d 566, 570 n.1 (2012) (citation omitted); see also Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 571 (2d Cir. 1990) (citation omitted).  Additionally, "there can be no recovery under this theory unless malevolence is the sole motive for defendant's

14

otherwise lawful act or, in other words, unless defendant acts from disinterested malevolence." Posner, 18 N.Y.3d at 570 n.1 (citation omitted). Motives "such as profit, self-interest, or business advantage will defeat a prima facie tort claim." Twin Labs., 900 F.2d at 571 (citation omitted).

Lebetkin has not plausibly alleged that Giray's sole motive in terminating the Consulting Agreement was "disinterested malevolence." The FAC alleges that Giray terminated the agreement after her romantic relationship with Lebetkin ended and after he repeatedly contradicted and challenged her attorneys' legal advice. Although Lebetkin has made conclusory allegations that Giray "determined to engage in intentional infliction of harm," he has not pled any facts to support that inference. The facts Lebetkin has pled indicate that Giray's termination of the Consulting Agreement was motivated by self-interest rather than a bare desire to harm Lebetkin.

Further, Lebetkin has failed to plead special damages as required to sustain a cause of action for prima facie tort. See Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143 (1985) ("A critical element of the cause of action [of prima facie tort] is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages."). The only damages he pleads are the general damages arising from Giray's alleged breach of the Consulting Agreement. In his opposition to this

15

motion, Lebetkin admits that he has not pleaded special damages, but argues that the Court should excuse his failure to do so. That argument is meritless.

Lebetkin's prima facie tort claim is additionally barred by the statute of limitations.  Lebetkin does not dispute that the statute of limitations for prima facie tort in New York is three years.  See C.P.L.R. § 214.  The Consulting Agreement was terminated on September 6, 2012, and this case was initially filed on March 12, 2018, five and a half years later. Accordingly, Lebetkin's prima facie tort claim against Giray may be dismissed on that ground alone.  See Akassy v. Hardy, 887 F.3d 91, 95 (2d Cir. 2018) (collecting cases holding that dismissal pursuant to Rule 12(b)(6) is appropriate where the dates in the complaint show the action is barred by the statute of limitations).

II.  Lewis Sassoon and Sassoon & Cymrot, LLP

A. Breach of Fiduciary Duty and Professional
   Malpractice

 "Under New York law, where a claim for breach of fiduciary duty is premised on the same facts and seeking the identical relief as a claim for legal malpractice, the claim for fiduciary duty is redundant and should be dismissed."  Nordwind v. Rowland, 584 F.3d 420, 432-33 (2d Cir. 2009) (citation omitted). Lebetkin has brought a claim for professional malpractice

16

arising from the same series of acts, and his claim for breach
of fiduciary duty is therefore redundant.

In any event, both claims are barred by the applicable
three year statute of limitations.  See C.P.L.R. § 214.
Lebetkin does not dispute that, in New York, "an action to
recover damages for malpractice, other than medical, dental, or
podiatric malpractice, regardless of whether the underlying
theory is based in contract or tort" must be commenced within
three years.  C.P.L.R. § 214(6).  A claim for legal malpractice
accrues when the malpractice is committed, not when the client
discovers it.  Shumsky v. Eisenstein, 96 N.Y.2d 164, 166 (2001).
The Consulting Agreement was terminated on September 6, 2012,
and this case was initially filed on March 12, 2018, five and a
half years later.

Additionally, Lebetkin has not pleaded sufficient facts to
state a plausible claim for breach of fiduciary duty or
professional malpractice.  "In order to prevail on a claim of
legal malpractice under New York law, a client must demonstrate
that the attorney was negligent, that the negligence was a
proximate cause of the injury and that the client suffered
actual and ascertainable damages."  Rubens v. Mason, 387 F.3d
183, 189 (2d Cir. 2004) (citation omitted).  Establishing
attorney negligence requires demonstrating that the attorney
owed a duty to the particular plaintiff.  Thus, "[i]f

plaintiff[] and defendants were never in an attorney-client

relationship . . . the claim for malpractice must fail." Latin

Am. Fin. Grp., Inc. v. Pareja, 04cv10082 (DLC), 2006 WL 2032627,

at *7 (S.D.N.Y. July 19, 2006) (applying New York law).  The

existence of an attorney-client relationship depends on a number

of factors, including:

> 1) whether a fee arrangement was entered into or a fee
> paid; 2) whether a written contract or retainer
> agreement exists indicating that the attorney accepted
> representation; 3) whether there was an informal
> relationship whereby the attorney performed legal
> services gratuitously; 4) whether the attorney
> actually represented the individual in an aspect of
> the matter (e.g., at a deposition); 5) whether the
> purported client believed that the attorney was
> representing him and whether this belief was
> reasonable.  With respect to the last criterion, New
> York courts have observed that one party's unilateral
> beliefs and actions do not confer upon him or her the
> status of client.

Id. at *7-8 (citation omitted).

Lebetkin has not plausibly alleged that he had an attorney-

client relationship with the Sassoon Defendants.  He admits that

part of his role as "litigation consultant" was to introduce

Giray to attorneys to represent her in contemplated litigation

against the Chobani Defendants.  He introduced her to the

Sassoon Defendants.  As described in the FAC, his interaction

with the Sassoon Defendants was in connection with the Chobani

Litigation and in his capacity as Giray's representative.  The

fact that the Sassoon Defendants reviewed the Consulting

18

Agreement with Lebetkin beforehand does not establish that they "represented" him in the negotiation of that Agreement. Although a written retainer agreement is not strictly necessary to establish an attorney-client relationship, it is telling that the Sassoon Defendants executed a letter of engagement with Giray, but not with Lebetkin, and that Giray's letter of engagement was executed on the same day as the Consulting Agreement. Nor did Lebetkin pay any fee to the Sassoon Defendants. The facts alleged in the FAC indicate that Giray was the Sassoon Defendants' client, and that the Sassoon Defendants did not also have an attorney-client relationship with Lebetkin, who was Giray's boyfriend and consultant.[7]

Additionally, Lebetkin has not adequately explained what the Sassoon Defendants did -- or failed to do -- that constitutes a breach of whatever duty they might have owed him. He has alleged that they failed to intercede on his behalf with Giray and with their co-counsel in the Chobani Litigation, and that they failed to "protect" his fees. These general, conclusory allegations fall short of Lebetkin's pleading burden. Accordingly, his claims for breach of fiduciary duty and

_____

[7] The plausibility of Lebetkin's claim that the Sassoon Defendants undertook "dual representation" of both him and Giray is significantly undermined by the fact that such an arrangement would likely have been ethically impermissible. See N.Y. Rule of Prof. Con. 1.7.

professional malpractice are dismissed.

B. Tortious Interference with Existing Contract

To establish tortious interference with an existing contract under New York law, "a plaintiff must show (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages." White Plains Coat & Apron Co., 460 F.3d at 285 (citation omitted). Lebetkin has failed to plausibly plead that the Sassoon Defendants intentionally procured Giray's breach of the Consulting Agreement. He alleges, in a conclusory fashion, that the Sassoon Defendants joined in a conspiracy to intentionally and deliberately cause Giray to breach the Consulting Agreement. He does not specify what the Sassoon Defendants did to induce this breach, or indeed any facts at all to support his claim. Accordingly, his claim against the Sassoon Defendants for tortious interference with contract is dismissed.

C. Aiding and Abetting Breach of Fiduciary Duty

Under New York law, the three elements of aiding and abetting a breach of fiduciary duty are: (i) "a breach by a fiduciary of obligations to another, of which the aider and abettor had actual knowledge," (ii) "that the defendant knowingly induced or participated in the breach," and (iii)

20

"that plaintiff suffered damage as a result of the breach." In re Sharp Int'l Corp., 403 F.3d 43, 49 (2d Cir. 2005) (citation omitted); see also Lerner v. Fleet Bank, N.A., 459 F.3d 273, 294 (2d Cir. 2006) (citation omitted).  As discussed above, there is no viable claim of a fiduciary relationship between Giray and Lebetkin.  Accordingly, Lebetkin's cause of action against the Sassoon Defendants for aiding and abetting Giray's breach of fiduciary duty is dismissed.

### D. Unjust Enrichment and Quantum Meruit

Unjust enrichment and quantum meruit are not separate causes of action, and may be analyzed together as a single quasi contract claim.  Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005).  The elements of a cause of action for unjust enrichment under New York law are set forth above.  Similarly, "[i]n order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  Id. (citation omitted).  Lebetkin has failed to state a claim for unjust enrichment or quantum meruit because he has failed to plausibly allege that the Sassoon Defendants benefited at his expense or accepted services from him.  The only parties to the Consulting Agreement

21

were Lebetkin and Giray, and Lebetkin's services were to be performed for Giray's benefit, not for the benefit of the Sassoon Defendants.  Further, the FAC contains no allegation that Lebetkin expected any compensation from the Sassoon Defendants for services he rendered to Giray.

## Conclusion

Both October 12, 2018 motions to dismiss are granted.  All of the claims in the FAC against defendants Lewis Sassoon and Sassoon & Cymrot LLP are dismissed.  Counts two, eight, and ten of the FAC against defendant Ayse Giray are dismissed.

Dated:     New York, New York
           December 14, 2018

                                    _____
                                    DENISE COTE
                          United States District Judge