# VERNER SIMON

USDC SDNY
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/14/2019

30 WALL STREET, 8TH FLOOR • NEW YORK, NEW YORK 10005 • (212) 502 5500 / (212) 502 5400 FAX

November 13, 2019

**VIA ECF**
Hon. Denise L. Cote
United States District Court - SDNY
500 Pearl Street, Room 1610
New York, NY 10007

*[Handwritten note: Letters to the Court may not exceed two pages without prior permission. Denise Cote 11/14/19]*

Re: *Lebetkin v Giray et al.* // Case No.: 18-cv-8170 (DLC)(GWG)

Dear Judge Cote:

This follows a bizarre development which I have not experienced before in my 30 years of practice before this Court.[1] (I declare under penalty of perjury pursuant to 28 USC §1746 that the facts set forth here are true). I describe the events as they transpired below and seek leave of the Court to re-open discovery to direct further demands to Defendant Giray and re-open her deposition. I ask that the Court place a stand-still on the pending summary judgement motion until this is completed.

On or about September 14, 2019, I read a letter received (**Exhibit A requested to be filed under seal**) from an inmate, Mustafa Gencoglanoglu, at the West Palm Beach (WPB) Detention Center. I was first obviously interested in the inmate's report of Defendant's alleged solicitation in relation to Mr. Lebetkin and me circa March - August 2018 – when this case commenced. While I have been practicing law long enough to have seen my fair share of inmate's tall tales, certain facts set out in the letter rang too close to the truth as I know it to be dismissed out of hand. I conferred with Mr. Lebetkin and he, knowing Giray much better than I, became extremely concerned and agitated.

About September 24th, I began to receive telephone calls from Gencoglanoglu from the WPB jail. A dialogue took shape over the next three weeks where I agreed to visit the inmate[2]. After the preliminary three weeks of telephone communications, two weeks of illness and clearing my schedule of other non-adjournable tasks, I finally made it down to the WPB jail on October 23, 2019. I have concluded after my interview of Mr. Gencoglanoglu that the facts set forth in the letter **Exhibit A** are very credible.

Upon my return to my office and report of my findings to Mr. Lebetkin, the prospect of reporting to criminal authorities rather than seeking a referral from this Court was resolved when Mr. Lebetkin unilaterally went to his local precinct and was directed to the FBI on October 30, 2019. Apparently, my report exacerbated Mr. Lebetkin's anxiety given the credible nature of the facts elicited from the inmate. Currently, an FBI agent has been assigned (Scott Wilson) and has begun his investigation in Florida.

By way of background, Mr. Gencoglanoglu states that he was a tenant in the apartment owned by

---

[1]   I apologize in advance as this letter must be 3 pages to properly address the facts and law.
[2]   I am unable to detail these conversations in that I have a conflict letter executed by him and Mr. Lebetkin.

# VERNER SIMON

Hon. Denise L. Cote
November 13, 2019
Page 2

Giray and which was located directly above Giray's residence apartment in West Palm Beach at 5600 N. Flagler Avenue. He worked for Giray for a few years renovating the apartments, as a handy-man for her on various other rental apartments owned by Giray, acting as her driver/chauffeur and as an assistant/man-Friday. Gencoglanoglu also dealt in historical artifacts and had some deal percolating which would have netted him a tremendous amount of money which Giray purportedly was financing. However, according to the inmate[3], Giray jilted him in some manner regarding the financing thereby ruining his prospects of earning a few million dollars. On top of this, Giray is said by the inmate to have owed him money for work he performed for her which she was refusing to pay.

Further, Gencoglanoglu was arrested in West Palm Beach in August 2018 after allegedly kidnapping Giray and attempting to ransom a payment of $2.5 million. The events giving rise to the arrest are set forth in the attached news article (**Exhibit B**). According to Mr. Gencoglanoglu, he was with Giray in the bank to be paid money she owed him when the police arrived. He denies that Giray was ever kidnapped.[4] Mr. Lebetkin had discovered that article in August 2018. *See*, accompanying Declaration of Mr. Lebetkin (**Exhibit C**).

The events described above, as well as the facts set out in **Exhibit A**, will surely be argued by Giray to have only indirect relevance to Lebetkin's contract dispute with Giray. However, my interview of the newly discovered witness leads me to believe that the witness has direct evidence on several facts which are relevant to the following contested issues of fact in this case:

1. Corroboration of Giray's reasons (as stated to her to the witness) for not paying Lebetkin's Consulting Fees;
2. The true value of the settlement which was reported to the state court in the *Giray v. Ulukaya/Chobani* case and from which Lebetkin derives his fees;
3. Corroboration of various disputed facts concerning the nature of the Ulukaya/Giray marriage (these facts are relevant to the defenses Giray presented in Lebetkin's case);
4. The fact that Giray was apparently so vindictive in relation to Mr. Lebetkin as to discuss with Gencoglanglu the facts set out in **Exhibit A**;
5. Giray's involvement in other alleged schemes which have a direct bearing on Lebetkin's allegations that she solicited false affidavits (the Adile Batuk and Gunnar Onarslan affidavits in furtherance of her case against Chobani – the alleged solicitation of which resulted in moral disputes between her and her then Consultant Lebetkin); and
6. Other admissible relevant evidence which may be found by further discovery of this man's knowledge through his deposition and then the re-opened deposition of Giray.

---

[3] Note the witness speaks Turkish and English is his second language which, according to the putative witness, he has learned in geometric leaps since being incarcerated in August 2018. Translation will still be required for the record.

[4] Because my communications have been cut off from Mr. Gencoglanoglu given the effects of the FBI's involvement, I cannot complete my plan to interview Mr. Gencoglanoglu's public defender.

# VERNER SIMON

Hon. Denise L. Cote
November 13, 2019
Page 3

I respectfully seek leave to re-open discovery as follows:

- A Commission and Order directing the U.S.D.C, W.D.FLA and Palm Beach County Sheriff's Office to make Mr. Gencoglanoglu available for a deposition in this matter to be video-taped and with Turkish translator participating;
- A re-opened deposition of Defendant Giray to follow within thirty (30) days of the receipt of expedited transcript of the Gencoglanoglu deposition; and
- Such other document production as is warranted by the depositions of Giray and Gencoglanoglu.

The law regarding re-opening of discovery is very fact dependent but generally involves situations where there is newly discovered evidence demonstrating that the case record is undeveloped. *See, e.g., Jones v Hirschfeld,* 2003 US Dist LEXIS 10370, at *16-18 (SDNY June 19, 2003). *See also,* F.R.C.P. 30(a)(2)(A)(ii)). "Leave (to re-open a deposition) should be granted to the extent that doing so is consistent with the factors set forth in Rule 26(b)(2), such as 'whether the second deposition of the witness would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit.'" *Dash v Seagate Tech. (US) Holdings, Inc.,* 2015 US Dist LEXIS 91105, at *16-17 (EDNY July 14, 2015, No. CV 13-6329), citing, *Ganci,* 2011 U.S. Dist. LEXIS 106320, 2011 WL 4407461, at *2) (collecting cases). "Courts will typically reopen a deposition where there is new information on which a witness should be questioned." *Id.,* quoting *Ganci,* 2011 U.S. Dist. LEXIS 106320, 2011 WL 4407461, at *2; *see, e.g, Vincent v. Mortman,* No. 04 Civ. 491, 2006 U.S. Dist. LEXIS 11213, 2006 WL 726680, at *1-2 (D. Conn. Mar. 17, 2006) (allowing plaintiff to reopen deposition when one witness' deposition contradicted defendants' deposition and medical records); *Chang v. Safe Horizons,* No. 03 Civ. 10100, 2004 U.S. Dist. LEXIS 16626, 2004 WL 1874965, at *2 (S.D.N.Y. Aug. 18, 2004); *Keck v. Union Bank of Switzerland,* No. 94 Civ. 4912, 1997 U.S. Dist. LEXIS 10578, 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997) (deposition reopened where affidavit provided evidence conflicting with witness testimony). Where the deposition is reopened because of newly discovered information, the questioning of the witness is limited to those questions relating to the newly produced information. *See Vincent,* 2006 U.S. Dist. LEXIS 11213, 2006 WL 726680, at *2; *Keck,* 1997 U.S. Dist. LEXIS 10578, 1997 WL 411931, at *2-4.

I respectfully ask that if the Court is not inclined to grant my application on these papers, that plaintiff be granted leave to file a formal full-length record motion and brief.

Thank you for your consideration.

Very truly yours,
VERNER SIMON

Paul Verner